2003 VT 55

Brad GILMAN and Lisa Emerson v.
MAINE MUTUAL FIRE INSURANCE
CO., Conley Country and Michael
Conley, and Bruce Bjornlund

[830 A.2d 71]

No. 02-170

¶ 1. June 3, 2003. The genesis of this suit was a fire in the newly purchased home of appellants Brad Gilman and Lisa Emerson. On October 14, 1998, Brad Gilman purchased a home in Derby, Vermont, from Anja Coolbeth. Ms. Coolbeth's realtor, appellee Michael Conley of Conley Country, attended the closing with a limited power of attorney signed by Ms. Coolbeth, enabling him to "execute and deliver" on her behalf "any and all documents required to consummate the sale of real estate." Appellee attorney Bruce Bjornlund represented Gilman in this transaction. Within eight weeks of purchase, on December 5, 1998, a fire started in the home, apparently caused by a candle burning too close to curtains, and caused extensive fire and smoke damage, as well as physical injuries to appellant Lisa Emerson. Although there were smoke detectors present in the home at the time of purchase, appellants contended that the smoke detectors failed to function as intended during the fire. Appellants filed claims sounding in contract and tort against appellees Conley, Conley Country, Bjornlund, and later, their insurer, appellee Maine Mutual Fire Insurance Company. The superior court dismissed appellants' claims, and they now appeal that dismissal. We affirm in part, reverse in part, and remand for proceedings consistent with this order.

¶ 2. In 1998, Maine Mutual issued Gilman a homeowner's fire protection insurance policy. After the fire, Gilman notified Maine Mutual of the fire and attendant property loss. On December 23, 1998, Gilman filed a sworn statement of proof of loss and personal property inventory enumerating the structural damage, the destroyed personal property items, and their value. Maine Mutual paid Gilman a total of $58,389.07 for structural damage and repair, and personal property loss. The total amount paid by Maine Mutual was greater than the amount Gilman claimed in his sworn proof of loss because additional living expenses and contractor costs were added by the adjuster as part of the claims process.

¶ 3. Appellants brought suit on October 9, 2001. They claimed that Conley Country, Michael Conley and Bruce Bjornlund failed to comply with or confirm compliance with 9 V.S.A. §§ 2881-2883, Vermont's smoke detector statute, and that this failure constituted negligence and/or breach of contract, which resulted in physical and property damage. Appellants also asserted a claim of "bad faith" against Maine Mutual, alleging that Maine Mutual violated its "obligations of good faith and fair dealing in adjusting the fire loss, [and] failing to pay plaintiff what was due and owing as a result of the fire."

¶ 4. Pursuant to V.R.C.P. 12(b)(6), Conley Country and Michael Conley moved to dismiss appellants' suit for failure to state a claim upon which relief can be granted. The trial court, by decision entered on March 21, 2002, granted the motion to dismiss, finding it "extremely doubtful" that §§ 2881-2883 create a private cause of action, but ruling that, even if they did, the statutes would apply only to a transferor of property, and not to a seller's representative with a power of attorney. The court also noted that Conley "never had title to property."

¶ 5. Attorney Bjornlund also filed a motion to dismiss pursuant to V.R.C.P. 12(b)(6). The court granted this motion, holding that appellants' complaint failed

to state a viable claim against Bjornlund because §§ 2881-2883 created no private cause of action, and that none could be implied. The court further found that there were no facts alleged suggesting any legal duty Bjornlund owed to appellants relative to the smoke detectors and, therefore, no facts supporting appellants' negligence claim. Finally, the court found that there were no facts alleged to establish any contractual undertaking by Bjornlund regarding the smoke detectors.

¶ 6. Maine Mutual filed a motion for summary judgment, arguing that appellants' suit was not commenced within one year of the date of loss as required by the operative insurance policy. The court granted Maine Mutual's motion and held that appellants failed to raise a genuine issue of fact as to whether the parties were still negotiating with Maine Mutual before expiration of the limitations period. Appellants appeal from these decisions.

¶ 7. We begin with appellants' challenge to the trial court's grant of summary judgment in favor of Maine Mutual. When reviewing a grant of summary judgment, this Court applies the same standard of review as the trial court: summary judgment is appropriate when the record before the court clearly shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *City of Burlington v. Nat'l Union Fire Ins. Co.*, 163 Vt. 124, 127, 655 A.2d 719, 721 (1994). Moreover, construction of the legal effect of the parties' agreements is a question of law and, as such, is appropriate for resolution on summary judgment. *Lussier v. Truax*, 161 Vt. 611, 612, 643 A.2d 843, 844 (1993) (mem.).

¶ 8. The undisputed facts establish that Gilman obtained homeowners insurance from Maine Mutual in 1998. After experiencing loss from a house fire on December 5, 1998, Gilman filed a sworn statement of proof of loss and personal property inventory. In December 1998 and through a series of payments thereafter, Maine Mutual paid Gilman a total of $58,389.07 for structural damage, repair, and personal property loss. The only issue raised following Maine Mutual's payment on the claim occurred in May and June 1998, when Gilman's contractor contacted Maine Mutual's adjuster to discuss several thousand dollars of additional payments. Maine Mutual's files indicated that it had already paid Gilman the amount sought by the contractor. Maine Mutual conveyed this information to the contractor at the end of June 1999. Maine Mutual heard nothing further from either the contractor or Gilman about the additional payments. Therefore, as of the end of June 1999, there was no further activity on Gilman's claim, and Maine Mutual closed the file accordingly. On October 10, 2001, Gilman filed suit against the insurer. The insurance policy issued by Maine Mutual to Gilman provides in pertinent part that "[n]o action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss."

¶ 9. Gilman's suit against Maine Mutual was filed more than thirty-four months after the date of the loss and over two years after final payments on the claim were made. Thus, appellants' claim was untimely under the clear and unambiguous language of the policy. Policy provisions establishing limitation periods by contract are valid and enforceable against an insured if the limitation period is not less than "twelve months from the occurrence of the loss, death, accident or default." 8 V.S.A. § 3663; see also *Hebert v. Jarvis & Rice and White Ins., Inc.*, 134 Vt. 472, 475, 365 A.2d 271, 273 (1976) (provision providing that recovery is barred unless suit initiated in given time valid unless time limit unreasonable); *Schlitz v. Lowell Mut. Fire Ins. Co.*, 96 Vt. 334, 336-37, 119 A. 516, 517 (1923) (policy provision requiring suit to be

brought within twelve months valid); *John Morrill & Co. v. New England Fire Ins.* Co., 71 Vt. 281, 284-85, 44 A. 358, 358-59 (1899) (one-year period valid).

¶ 10. Appellants seek to avoid this result by arguing that the date from which the contractual period of limitation should be measured is Maine Mutual's alleged breach of good faith and fair dealing, and further, that the insurer waived any ability to rely on the one-year limitation provision by failing to notify appellants that the time limit may be expiring and may affect their rights as is provided in Regulation 79-2 S 6 of the Vermont Department of Banking, Insurance and Securities pursuant to 8 V.S.A. § 4812. However, appellants failed to create a disputed issue of material fact by offering no evidentiary support for their claim that, in fact, negotiations between themselves and the insurer had not been concluded, or that Maine Mutual had any knowledge of appellants' dissatisfaction with the settlement of the claim. See V.R.C.P. 56(c)(2) ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. The statements of material facts required to be served under this paragraph ... shall contain specific citations to the record."). Pursuant to Rule 56(c), it was appellants' obligation to respond to Maine Mutual's motion with factual support controverting the insurer's assertion. This they failed to do. There was no dispute that all communications and claims had been concluded by June of 1999. Therefore, the regulation requiring notice of time limitations is not applicable, and the motion for summary judgment was properly granted.

¶ 11. We now address appellants' claims based on appellees Conley, Conley Country, and Bjornlund's alleged failure to comply with Vermont's smoke detector statute, 9 V.S.A. §§ 2881-2883. Appellants' complaint alleged that appellees acted negligently when they failed to ensure that a legal certificate relating to smoke detectors was properly signed and delivered at the closing on the property, as is required by §§ 2882-2883.[1] The court expressed doubt that a failure to comply with §§ 2881-2883 creates a private right of action and granted appellees' motions

---

[1] Section 2882. Installation

. . . .

(b) On and after July 1, 1994, a single-family dwelling transferred by sale or exchange shall contain one or more smoke detectors powered by the electrical service in the building or by battery or by a combination of both, and installed in accordance with the manufacturer's instructions.

(c) Nothing in this section shall require an owner or occupant of a single-family dwelling to maintain or use a smoke detector after installation.

Section 2883. Requirements for transfer of dwelling

(a) On and after July 1, 1994, the transferor of a single-family dwelling, whether the transfer be by sale or exchange, shall certify to the buyer that the dwelling is provided with one or more smoke detectors in accordance with this chapter. This certification shall be signed and dated by the seller.

(b) If the transferee notifies the transferor within ten days by certified mail from the date of conveyance of the dwelling that the dwelling lacks a smoke detector or that a smoke detector is not operable, the transferor shall comply with this chapter within ten days after notification.

to dismiss, finding that "the Conleys were not the 'transferors' of the property even if they did facilitate conveyance as sellers' representatives via power of attorney."

¶ 12. On appeal, appellants do not argue that there is a statutorily-created private right of action. Appellants contend that their claim, properly read, alleged that appellees' violation of the statute demonstrated negligence and provided evidence of a contractual breach. Appellants also concede that a certificate of compliance was signed by the seller, as is required by the statute. See 9 V.S.A. § 2883. However, appellant Gilman maintains that he did not receive the certificate of compliance at the closing and that appellees could not provide a fully executed certificate; that is, one signed by the buyer acknowledging receipt of same. Thus, appellants assert that whether the certificate contemplated by the statute was provided to buyer at closing is a contested issue of fact.[2]

¶ 13. Pursuant to the smoke detector statute, the transferor of a single-family dwelling must certify that the dwelling has one or more smoke detectors. *Id.* § 2883(a). The statute also specifies that, if the buyer notifies the transferor within ten days from the date of conveyance that the dwelling lacks a smoke detector or that a smoke detector is not operable, the transferor shall provide the necessary smoke detector within ten days from notification. *Id.* § 2883(b).

¶ 14. In reviewing a court's grant of a motion to dismiss, this Court accepts all factual allegations pleaded in the complaint as true and all reasonable inferences from those facts. *Richards v. Town of Norwich,* 169 Vt. 44, 48-49, 726 A.2d

---

[2] Appellants raise for the first time on appeal the issue of violation of a safety statute as negligence per se. As it was not presented to the court below, we do not consider this argument on appeal.

81, 85 (1999); *Ass'n of Haystack Prop. Owners, Inc. v. Sprague,* 145 Vt. 443, 444, 494 A.2d 122, 123 (1985). A court should not dismiss a cause of action for failure to state a claim upon which relief may be granted "unless it appears beyond doubt that there exist no circumstances or facts which the plaintiff could prove about the claim made in his complaint which would entitle him to relief." *Levinsky v. Diamond,* 140 Vt. 595, 600-01, 442 A.2d 1277, 1280-81 (1982), *overruled on other grounds by Muzzy v. State,* 155 Vt. 279, 583 A.2d 82 (1990). A motion to dismiss for failure to state a claim is not favored and rarely granted. *Ass'n of Haystack Prop. Owners,* 145 Vt. at 446-47, 494 A.2d at 125 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 598 (1969)).

¶ 15. Appellants claim that realtor Michael Conley and Conley Country negligently failed to provide them with a certificate of compliance upon closing, as is required by 9 V.S.A. § 2883(a). To sustain a claim of negligence, a plaintiff must establish four elements: (1) that the plaintiff was owed a legal duty by the defendant; (2) that the defendant breached that duty; (3) that the defendant's conduct was the proximate cause of the plaintiff's injuries; and (4) that the plaintiff suffered actual damage as a result of the negligence. *Knight v. Rower,* 170 Vt. 96, 102, 742 A.2d 1237, 1242 (1999). In this case, the seller of the property, Ms. Coolbeth, appointed Mr. Conley as her attorney in fact for the purposes of the sale of the home. The power of attorney authorized Conley to execute and deliver on Ms. Coolbeth's behalf all "tax forms, Survey Affidavits, errors and omissions forms and any other instruments or documents necessary to consummate said conveyance."

¶ 16. The trial court held that Conley and Conley Country "were not the 'transferors' of the property even if they did facilitate conveyance as seller's representatives via power of attorney. Conleys

never had title to property." It may be, as the trial court held, that Conley and Conley Country were not the *sellers* of the property because they never held title to same. However, under the power of attorney, it could be argued that Conley had the responsibility to deliver to the transferee the smoke detector certificate signed by the seller and required by the statute. We find that the court acted too hastily in granting the Conley and Conley Country motions to dismiss. The court dismissed the case against the real estate agency and the agent for the seller without examining their responsibilities under the statute pursuant to the power of attorney they held that allowed them to facilitate the sale of the single-family dwelling.

¶ 17. Appellants also claim that attorney Bjornlund acted negligently and violated his contract of employment when he failed to ensure that the required certificate of compliance was properly delivered to his client, Gilman, at the closing on the property. The trial court, in dismissing the action against Bjornlund for failure to state a claim, determined that appellants had alleged no facts that would suggest the existence of a legal duty or that would establish any "contractual undertaking" by Bjornlund as to fire detectors.

¶ 18. In general, the standard of care to which an attorney is held in rendering professional services is the degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent attorney. See *Estate of Fleming v. Nicholson*, 168 Vt. 495, 498, 724 A.2d 1026, 1028 (1998). Gilman asserts that he hired Bjornlund as his attorney to assist with the legal issues involved in the purchase of the property and, as part of that employment, Bjornlund had a duty to ensure that all proper certificates were provided at the closing, and to advise his client of his rights under the smoke detector statute, including, presumably, the right to

make a claim against the transferor of the property that smoke detectors were lacking or not working within the ten day statutory period. Appellants, in their complaint, alleged that the smoke detectors were defective, that compliance with the smoke detector statute did not occur, and that their legal counsel did not ensure compliance at closing with the smoke detector statute. According to appellants, Bjornlund's failure to do so constitutes negligence and was a proximate cause of appellants' subsequent injuries.

¶ 19. In his pleadings below and here on appeal, Bjornlund argues that, as attorney for the buyer, he had no duty to inspect the single-family dwelling to verify the seller's contention that the home's smoke detectors worked.

¶ 20. The 12(b)(6) inquiry focuses on the absence of any facts, reasonable factual inferences, and legal bases for recovery alleged in the complaint, attachments thereto, or to matters the court may judicially notice. See *Wentworth v. Crawford & Co.*, 174 Vt. 118, 120-21, 807 A.2d 351, 352 (2002). The motion is a test of whether any factual allegations have been made by the claimant or can be inferred to support the continuation of a cause of action.

¶ 21. Again, we find that the court acted too hastily in granting Bjornlund's motion to dismiss. It dismissed the case without exploring the fiduciary, contractual, and professional duty owed by an attorney to his or her client at a real estate closing, and specifically with reference to ensuring that the certificate of compliance required by 9 V.S.A. § 2883 is provided. It may be that the trial court was holding that there were no facts to support a finding that Bjornlund had agreed to a "contractual undertaking" to inspect the smoke alarms in the dwelling; that was not however the claim of appellants.

¶ 22. Consequently, at this early stage of litigation, it cannot be held beyond

doubt that there exists no circumstances or facts that appellants could prove about the claim made in the complaint which would entitle them to relief.

¶ 23. We agree with the court that appellants have alleged no cause of action against the real estate agency and agent involved in the transfer of property based on a claim of breach of contract. There was no contract between appellants and Conley Country or Michael Conley, the agent for the seller.

*The trial court's grant of summary judgment in favor of Maine Mutual is affirmed. The trial court's grant of motions to dismiss in favor of Conley, Conley Country, and attorney Bjornlund is reversed in part and affirmed in part, and the cause is remanded for further proceedings consistent with this order.*

Note. Justice Morse was present when the case was submitted on the briefs but did not participate in this decision.